FILED
 2015 Oct-19 PM 01:25
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **GEORGE A. BRUMFIELD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 5:14-CV-0365-SLB |
| | ) |
| **ROBERT BENTLEY, Governor;** | ) |
| **JEFFERSON S. DUNN, Commissioner;** | ) |
| **MARK BURTON, Director of Central** | ) |
| **Records,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (doc. 1),[1] filed by petitioner George A. Brumfield. Petitioner alleges that he is being held unlawfully by the Alabama Department of Corrections [ADOC] after completion of his sentence. Respondents – Robert Bentley, in his capacity as Governor of Alabama; Jefferson S. Dunn, in his capacity as the Commissioner of ADOC;[2] and Mark Burton, Director of Central Records – deny petitioner has completed service of his sentences or that he is otherwise entitled to release from the ADOC's custody. (*See generally* doc. 13.) Upon consideration of the record, the submissions of the parties, and the relevant law, the

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]At the time, petitioner filed his Petition for habeas relief, the Commissioner of ADOC was Kim Thomas. The current Commissioner Dunn is substituted for Thomas by operation of law. *See* Fed. R. Civ. P. 25(d).

court is of the opinion that the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (doc. 1), is due to be denied.

## I.  FACTUAL AND HISTORICAL BACKGROUND

While serving a 50-year prison sentence in Louisiana, petitioner was indicted by a grand jury in Tuscaloosa County, Alabama, for two rapes occurring in July 1977.[3] (*See* Doc.1 at 2; doc. 13-1 at 6-7.)  Arrest warrants were issued for the petitioner on July 2, 1979, based on the indictments.  (*See* doc. 1 at 2.)  On January 8, 1981, he was transported from prison in Louisiana and incarcerated in the Tuscaloosa County Jail for trial on the indictments, which were then assigned case numbers CC-81-1 and CC-81-2.  (*Id*.; doc. 13-1 at 6-7.)  The two cases were tried separately.  On October 6, 1981, petitioner was convicted in case CC-81-2 and sentenced to 20 years.  (Doc. 13-1 at 6.)  On November 4, 1981, he was convicted in case CC-81-1 and sentenced to 150 years.  (*Id*. at 7.)  Neither sentence was to run concurrent with any other sentence, including the Louisiana sentence.  (*See* doc. 13-1 at 1 [citing, *inter alia*, Ala. Code 14-3-38].)[4]  Petitioner's convictions were affirmed by the

---

[3]When he was arrested in Louisiana, petitioner confessed to committing rapes in Alabama, Louisiana, and Mississippi.  *See State v. Talbot*, 408 So. 2d 861, 880 (La. 1980).  Testimony was offered at petitioner's trial that he had confessed to two rapes in Tuscaloosa County while in jail in Louisiana.  *See Brumfield v. State*, 453 So. 2d 1097, 1099 (Ala. Crim. App. 1984).

[4]*See* Ala. Code 14-3-38(a)("When a convict is sentenced to imprisonment in the penitentiary on two or more convictions, unless it is specifically ordered in the judgment entry that such sentences be served concurrently, such sentences shall be cumulative and shall be served consecutively, the first term thereof beginning to run from the date on which such prisoner is received at the penitentiary, reformatory or jail for service of the sentence or at some place of detention to await transportation to the place where his sentences are to

Alabama Court of Criminal Appeals. *See Brumfield v. State*, 453 So. 2d 1097 (Ala. Crim. App. 1984).

Following his convictions, petitioner remained in Alabama. In November 1981, he testified at as hearing on another Alabama inmate's petition for writ of error coram nobis. *See Howton v. State*, 432 So. 2d 548, 549 (Ala. Crim. App. 1983). He confessed to the assault for which this inmate, Roger Dale Howton, had been convicted. *Id*. He subsequently recanted his confession at a hearing in February 1982. *Id*. While in Alabama, he was transferred to the ADOC at the Kilby Prison Hospital on February 1, 1982. (Doc. 13-1 at 9.) He was assigned an inmate number and given a sentence-calculation sheet showing a "sentence computation date" of October 6, 1981, the date of his conviction in case CC-81-2. (*Id.* at 6, 9.) The sentence-calculation sheet showed petitioner's "short date" for release as January 7, 2066, and a "long date" of January 7, 2151. (*Id*.) Petitioner was returned to Louisiana from the Fayette County Jail on or about March 10, 1982. (Doc. 1 at 19.) The ADOC lodged a detainer with Louisiana authorities in early 1984.[5]

As petitioner approached the completion of his Louisiana sentence, prison officials in that state sent notice to Alabama, dated June 18, 2007, that petitioner would complete his Louisiana sentence on August 2, 2007. (Doc. 13-1 at 2, 12.) The notice indicated that a

---

be served and his second and subsequent terms, each, beginning on the expiration of the preceding term.").

[5]The detainer is dated January 31, 1984, (doc. 13-1 at 10), and the Louisiana acknowledgment of the detainer was dated February 13, 1984, (*id*. at 11).

waiver of extradition would be sent to the petitioner for his execution. (*Id*. at 12.) Petitioner did not sign the waiver of extradition, and, on August 16, 2007, Alabama governor Bob Riley signed and sent to Louisiana a Request for Executive Rendition, requesting the return of petitioner to Alabama for the service of his sentence on two counts of rape. (Doc. 1 at 20.) On September 24, 2007, Louisiana governor Kathleen Babineaux Blanco issued her executive warrant "to arrest and aid and assist in arresting said fugitive [petitioner] and to deliver the said fugitive when arrested to" agents of the State of Alabama for return. (*Id*. at 21.)

Petitioner arrived in ADOC custody on October 3, 2007. (Doc. 13-1 at 13.) ADOC recalculated his sentence. (*Id*.) He received credit for 422 days of service toward his 20-year sentence and 126 days of service toward his 150-year sentence. (*Id*.) His Inmate Summary as of 07/13/2011, shows his "short date" for release is August 5, 2091, and his "long date" for release is August 5, 2176. (*Id*.)

On a date not made clear by the record, petitioner filed his petition for a state writ of habeas corpus in the Circuit Court of Limestone County. That court dismissed the petition on December 9, 2011, writing:

> This cause comes before this Court on the Petitioner's request for a writ of habeas corpus concerning his claim that he has not been credited with all the time he is due against his two sentences for having committed first-degree rape. The Respondents have filed a motion to dismiss or, in the alternative, motion for summary judgment. Along with this motion, the Respondents have submitted an affidavit and records explaining the Petitioner's convictions and sentences, as well as the calculation of his release date. The Petitioner has filed a response objecting to the Respondents' summary judgment motion.

> The Court has undertaken a review of both the Petitioner's claims and the Respondents' arguments and evidence supporting their dispositive motion. After due consideration, the Court has determined that the Petitioner is not entitled to habeas relief. To the extent the Petitioner contends he has been deprived of credit against his current Alabama sentences based on time he served in Louisiana on other felony sentences that he received in that state, he has failed to show any judicial intent that such sentences were to be served concurrently. Likewise, the Petitioner has failed to show that the Respondents have taken incentive time which he has previously earned. Finally, to the extent the Petitioner asserts that Alabama constructively pardoned him by releasing him to the custody of Louisiana in 1982, such argument has no basis in law or fact.
>
> Therefore, the Respondents' motion for summary judgment is due to be GRANTED, and this action is hereby DISMISSED. . . .

(Doc. 13-2 at 2.) The Alabama Court of Criminal Appeals affirmed summarily the dismissal of the state petition and the Alabama Supreme Court denied certiorari review. (Doc. 13-3; doc. 13-4.)

Petitioner filed the instant federal Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 on March 4, 2014.[6] The court entered its order for the respondents to show

---

[6] The court notes that petitioner has previously filed a § 2241 case that was dismissed voluntarily. *See Brumfield v. Ala. Dept. of Corrections*, Case No. 5:12-CV-2248-SLB-TMP. This Petition is governed by 28 U.S.C. § 2254. "[W]hen a state prisoner is challenging the very fact or ***duration*** of his physical imprisonment, and the relief he seeks is a determination that he is entitled to ***immediate release*** or a ***speedier release*** from that imprisonment, his ***sole*** federal remedy is a writ of habeas corpus." *Reiser v. Rodriguez*, 411 U.S. 475, 500 (1973)(emphasis added). In this Circuit –

> A state prisoner seeking post-conviction relief from a federal court has but one remedy: an application for a writ of habeas corpus. All applications for writs of habeas corpus are governed by § 2241, which generally authorizes federal courts to grant the writ – to both federal and state prisoners. Most state

5

cause why relief should not be granted on April 11, 2014, and the respondents filed their answer, supported with exhibits, on May 21, 2014. The parties were notified on May 22, 2014, that the petition was ready for summary adjudication, and petitioner was given the opportunity to traverse the answer by the respondents. Petitioner filed his traverse on June 9, 2014.[7]

---

> prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254. That is, if a state prisoner is "in custody pursuant to the judgment of a State court," his petition is subject to § 2254. If, however, a prisoner is in prison pursuant to something other than a judgment of a state court, e.g., a pre-trial bond order, then his petition is not subject to § 2254.

*Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003). Clearly, petitioner is in the custody of ADOC because he was convicted in state court. Therefore, although he asserted his Petition is not governed by § 2254, this court's authority to issue the writ is constrained by that section. *See id*. at 1059-60.

[7]Petitioner also filed a writ of mandamus with the Eleventh Circuit, seeking an expedited ruling on his petition; he did not serve a copy of his petition on this court. Moreover, the Eleventh Circuit did not send notice of petition to this court directly. It sent notice to an electronic mailbox in the court's Clerk's Office, which was not forwarded to this court or to the Magistrate Judge and was not filed in the court's record. As a result, the Eleventh Circuit has now entered an order directing the court to rule on the Petition within 14 days. This order was sent directly to the Magistrate Judge, but not to the undersigned.

## II. DISCUSSION[8]

In his § 2241 petition, petitioner raises two claims related to the service of his 170-year sentence in Alabama. As to Claim One, he alleges that he "was erroneously released from Alabama prison and is entitled to credit for time spent at large after being erroneously released by State officials." (Doc. 1-1 at 6.) In support of this claim, he alleges that he "was found guilty in Tuscaloosa on October 6, 1981, then on February 2, 198[2] the county jail of Tuscaloosa County[,] Alabama, took [petitioner] to Kilby Correctional Facility to serve his 170 years in Alabama instead of tak[ing him] back to Louisiana prison. [Petitioner's] good time started and should have run while he was at large in the Louisiana prison system." (*Id*. at 7.) In Claim Two petitioner asserts that he "was released from Alabama Prison Custody of DOC[, which was erroneously done, [and] that his release[ ] was no fault of his own." (*Id*.) In support of the claim, he states, "The plaintiff was entered into the Alabama

---

[8]The court herein discusses the merits of the Petition. The Magistrate Judge issued a Show Cause Order to petitioner, ordering him to show cause why this Petition should not be dismissed as untimely filed. The court notes that petitioner previously filed a Petition seeking identical relief on June 22, 2012. *See Brumfield v. Ala. Dept. of Correc.*, Case No. 5:12-CV-2248-SLB-TMP, doc. 1 (N.D. Ala. June 22, 2012). This action was dismissed on petitioner's Motion on November 13, 2012. *Id*., doc. 10. Petitioner filed his current Petition on March 3, 2014, more than a year following dismissal of his previous petition. Even assuming that his prior petition was timely filed and tolled the running of the habeas statute, this Petition is clearly time-barred. 28 U.S.C. § 2244(d)(1)(D)("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of – . . . (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). The Magistrate Judge did not indicate his reasons for not dismissing this Petition on the statute-of-limitations ground. Therefore, this court has chosen to address the merits.

Department of Corrections on February 1, 1982 and then ejected from the state by Fayette County, when taken back to the Louisiana Prison. This was done on March 10, 1982." (*Id*.) The court construes these allegations to state two claims for relief: (1) petitioner was denied "good time" credits against his Alabama sentence while serving his Louisiana sentence because he started serving his Alabama sentence before being returned to Louisiana; and (2) Alabama constructively pardoned him or otherwise lost jurisdiction over him for service of his Alabama sentence when the state returned him to Louisiana after admitting him to the ADOC and commencing his Alabama sentence.

**A.  "GOOD TIME CREDITS"CLAIM**

Petitioner's first claim for habeas relief contends that he has been denied good time credits to which he is entitled against the service of his 170-year sentence. Specifically, he claims that, because his crimes of conviction occurred prior to 1980, he was entitled to both Statutory Good Time [SGT] and Incentive Good Time [IGT] under Alabama law applicable to his convictions, and that these credits accrued on the date he first was admitted to the ADOC on February 1, 1982. Respondents deny petitioner is entitled to any relief on this claim because he was never entitled to IGT and that, in fact, he has been credited with 85 years of SGT, which is all the time to which he is entitled.

Before May 19, 1980, good time credit applicable to service of sentences in Alabama came in two forms, under two distinct statutes. A prisoner sentence for a crime occurring before 1980 could be entitled to both SGT, pursuant to Ala. Code §§ 14-9-1 through 14-9-4

8

(repealed), and IGT under Ala. Code §§ 14-9-20 through 14-9-25 (repealed). Under the SGT statute, a prisoner was automatically credited, on the first day of his sentence, with one day of SGT credit for every day the prisoner was anticipated to serve. This meant that SGT worked a 50% reduction of the imposed sentence on the first day served, subject to that credit being revoked, in whole or in part, for disciplinary reasons. By contrast, the IGT statute authorized the ADOC to award up to two IGT-credit days for every day served by "exceptional" prisoners. Section 14-9-21 provided, in relevant part: "The board of corrections is hereby empowered to create within the existing classification system a new classification system which would authorize a maximum deduction from the term of the sentence of an exceptional inmate of two days for each one day served." *See Carlile v. Alabama Dep't of Corr.*, 887 So. 2d 1010, 1012 (Ala. Crim. App. 2003). Unlike SGT, which was automatically credited, IGT was discretionary with the ADOC and was credited only as the prisoner served each day of his sentence. *See*, *e.g. Risner v. State*, 522 So. 2d 336, 337 (Ala. Crim. App. 1988)(inmate must "earn" IGT through actual service of sentence). Thus, while SGT had the effect of automatically reducing a prisoner's sentence by half, IGT credits accumulated, if at all, only as the prisoner served actual days in prison. For every day served, an "exceptional" inmate could, in the ADOC's discretion, be awarded two IGT-credit days for every day served, thereby reducing his sentence by three days for every day actually served (i.e., one day of actual service plus two days of IGT credit).

In the instant case, petitioner has been awarded his full SGT. The sentence-calculation sheets provided both by petitioner and the ADOC reflect that he has been credited with 85 years against his 170-year sentence. Even with that credit, his minimum release date, or "short date," is in 2066. Thus, there has been no miscalculation with respect to the SGT component of his claim for "good time" credit, and he not entitled to habeas relief on this basis.

Also, the court finds no error with respect to the IGT because petitioner was not entitled to accrue those credits while he was not actually serving his Alabama sentence. From March 10, 1982, when he was returned to Louisiana to serve his sentence, until October 3, 2007, when he was returned to the ADOC upon extradition from Louisiana, petitioner was not serving his Alabama sentence; he was serving his Louisiana sentence to which the Alabama sentence was consecutive. Under the IGT statute, petitioner could not accrue additional IGT credits until he was serving the Alabama sentence. While he was in Louisiana, he was not serving the Alabama sentence and, thus, not eligible for any additional IGT credit. Moreover, even if petitioner had received IGT credits since he began serving his Alabama sentence,[9] such credit would not reduce his sentence to the point of being entitled

---

[9] The record does not indicate whether or not petitioner has received IGT credit.

to release.[10] Accordingly, petitioner is not entitled to any habeas relief on the claim that he has not been properly credited with all "good time" credits to which he was entitled.

The Petition will be denied as to this ground for relief.

**B. RELEASE**

Petitioner's second claim asserts that, when Alabama returned petitioner to Louisiana in 1982 to continue serving a sentence there, it constructively pardoned him or otherwise lost jurisdiction to require him to return to Alabama to re-start serving the 170-year sentence imposed on October 6, 1982, or, alternatively, that it is required to credit him with the time he served in Louisiana against the Alabama sentence.

**1. Credit for Time Served in Louisiana**

Although the record is not entirely clear, respondents assert that Alabama "borrowed" petitioner from Louisiana in 1981 to prosecute him with respect to the two rape indictments returned in 1979 by the Tuscaloosa County grand jury.[11] Once he was convicted in late 1981,

---

[10]For example, prior to returning to Alabama, petitioner's minimum release date was in 2066. Assuming petitioner had received two days of IGT credit for every day served since his return in 2007, his minimum release date would be 2050.

[11]Petitioner has not alleged otherwise. The court assumes that he was transported from Louisiana to Alabama pursuant to the provisions of the Interstate Agreement on Detainers, an interstate compact under which a "receiving state" may lodge a detainer with a "sending state" to obtain custody of a prisoner once he has completed his sentence. If the prisoner demands a speedy trial with respect to charges underlying the detainer, the "sending state" sends the prisoner to the "receiving state" for resolution of the charges. Once the charges are resolved by trial or plea, the prisoner is returned to the "sending state" to complete his sentence there. If, however, the "receiving state" returns the prisoner to the "sending state" before the resolution of its charges, the anti-shuttling provision of the agreement requires dismissal of the "receiving state's" charges. *See Alabama v. Bozeman*,

he was transferred to the ADOC on February 1, 1982, where he was assigned a prison number and given a preliminary calculation regarding service of his sentence. A little over a month later, on March 10, 1982, he was returned to Louisiana. Petitioner contends he was "released as a state prisoner of Alabama," and this caused Alabama to lose its power to require him to return to Alabama after completing his sentence in Louisiana to serve the 170-year sentence.[12] (*See* doc. 15 at 3.) Alternatively, he contends that Alabama was required to credit him with time served in Louisiana after his return in 1982.

---

533 U.S. 146, 153 (2001). Petitioner has not alleged any violation of the Interstate Agreement, and there does not appear to be any dispute that his trials in Alabama took place before he was returned to Louisiana.

[12]Petitioner also contends that he was seized illegally because Alabama's Request for Interstate Rendition stated that he was a "fugitive from justice in an unknown state," when they knew he was serving his Louisiana sentence. (Doc. 15 at 3; *see also* doc. 1 at 3 [In August of 2007, the Governor of Alabama and ADOC issued a "Fugitive Warrant" against George, who was not a fugitive because the Official's [sic] of Alabama were the ones who took him back to Louisiana."].) The "Request for Interstate Rendition" does not state that Brumfield is a "fugitive from justice in an unknown state;" it does refer to petitioner as a "fugitive." However, at the time, petitioner was a fugitive because he had been convicted of committing crimes in Alabama, he had left the state, he had been found in Louisiana, and he had refused to return to Alabama voluntarily. *See Mozingo v. State*, 562 So. 2d 300, 304 (Ala. Crim. App. 1990); *see also Mitchell v. Obenski*, 134 Fed. Appx. 548, 551 (3d Cir. 2005)( "The Supreme Court held nearly a century ago that 'all that is necessary to convert a criminal . . . into a fugitive from justice is that he should have left the State after having incurred guilt there." (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911) and citing *Gee v. Kansas*, 912 F.2d 414, 418 (10th Cir. 1990); *Moncrief v. Anderson,* 342 F.2d 902, 904 (D.C. Cir. 1964))); *Strachan v. Colon*, 941 F.2d 128, 130 (2d Cir. 1991)("Yet, all that is necessary to make a person a fugitive from justice is that he leave a state under whose laws he has incurred guilt."). Therefore, the court finds petitioner has failed to establish that he was not a fugitive in 2007.

There are several theories under which the execution of a lawfully imposed sentence may become unlawful, but it is unclear in this case upon which of these the petitioner relies. The petitioner seems to argue that Alabama lost its jurisdiction to require him to serve the 170-year sentence when it returned him to Louisiana to resume serving the 50-year sentence imposed in that state. He also seems to argue that Alabama must give him credit for the time he was in Louisiana as "credit while at liberty." However, neither of these theories support petitioner's claim.

Insofar as petitioner contends that Alabama "released" or constructively pardoned him to Louisiana, he has failed to prove that he was ever released – erroneously or otherwise. Petitioner was brought to Alabama from Louisiana to face Alabama charges. At the time, he was serving a 50-year sentence in Louisiana. Following the trials in Alabama, petitioner received sentences totaling 170 years. These sentences were to be served after petitioner completed his Louisiana sentence. After he was convicted and after he gave testimony in another case in Alabama, petitioner was returned to Louisiana to continue serving that sentence.

Citing *United States v. Martinez*, petitioner appears to argue that he was "at liberty" after he was returned to Louisiana in 1982 and is entitled "to credit toward his Alabama [sentence] from February 25, 1982[,] the date he was erroneously released from [ADOC] rather than being extradited back as a fugitive to the custody of the [ADOC in 2007]." (Doc. 1 at 5.) The court finds petitioner has failed to prove he was ever "at liberty" at any time

13

between his conviction in Louisiana and today. *See Scott v. United States*, 434 F.2d 11, 22 (5th Cir. 1970)(describing petitioner as "at liberty" when he was released from custody and "was allowed to go out into the free world"). Until returned to Alabama in 2007, he was serving the Louisiana sentence, even while he was loaned to Alabama for purposes of prosecution and testimony.

A district court in Georgia has explained the "time at liberty" doctrine's origins as follows:

> The doctrine of credit for time at liberty was set forth in *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930). In *Pearlman*, the warden of a United States Penitentiary advised a prisoner that his term was about to expire. The prisoner informed the warden that there must have been a mistake because he was sentenced to serve five years. However, the warden "told him that the records showed three years, and he was going to abide by the records." *Pearlman*, 42 F.2d at 789. The prisoner was released from prison, and he re-established his home. More than two years later, the prisoner was informed that he was "wanted"; he voluntarily returned to prison to serve the remainder of his sentence. *Id*. The Tenth Circuit affirmed the district court's grant of petition for writ of habeas corpus and determined "that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty." *Id*.
>
> The Eleventh Circuit addressed the doctrine of credit for time at liberty in *Little v. Holder,* 396 F.3d 1319 (11th Cir. 2005). The petitioner in *Little* was serving a state sentence and was temporarily released to federal custody to face charges for using a firearm during the commission of a drug trafficking crime. Little pleaded guilty to the federal charges, and his federal sentence was to run consecutively with his state sentence. Little was returned to state custody after he was sentenced in federal court; however, the USMS never "lodged a detainer with the state", and federal authorities were not notified of his release from state custody. *Little,* 396 F.3d at 1320. Little was at liberty for nearly four years when he was arrested a second time by the state. This time, the USMS lodged a detainer with the state regarding his outstanding

> federal sentence. *Id.* After the expiration of his second state sentence, Little was taken into federal custody to begin service of his federal sentence. Little sought his immediate release from federal prison because "his erroneous release was due to negligence by the Marshals Service", and he should have been credited for the time he was at liberty. *Id.* The Eleventh Circuit "recognize[d] that some courts grant credit for time at liberty to prisoners who have been forced to serve their sentences in installments through a series of releases and reincarcerations." *Id.* at 1321. The Eleventh Circuit specifically mentioned the *Pearlman* case and noted its holding that a prisoner cannot be required to serve his sentence in installments. *Id.* at 1322. However, the Eleventh Circuit found that Little had "not been forced to serve his federal sentence in installments. Rather, the commencement of his federal sentence was merely delayed. Little has served his federal sentence continuously and without any interruptions since it began[.]" *Id.*

*Goins v. Hickey*, No. CV207-135, 2008 WL 3819830, at *5-*6 (S.D. Ga. Aug. 13, 2008).

Petitioner, quoting *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir. 1988), contends:

> Under the doctrine of credit for time at liberty[,] a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or more negligence[13] on behalf of the government and provided the delay in execution of sentence was through no fault of his own.

(Doc. 1 at 6 [footnote added].) Petitioner argues that he was released from ADOC custody after he began serving his sentence in 1981. (*Id*. at 7.) He argues, without support and contrary to the evidence, that "from March 10, 1982 [until] August 16, 2007[,] neither George [nor] the State of Louisiana . . . had [any] indication that George was wanted by

---

[13]The *Martinez* opinion actually states that the petitioner must show "simple or **mere** negligence." *Martinez*, 837 F.2d at 865 (emphasis added).

15

Alabama authorities. George further asserts that Alabama authorities had opportunities to know of his whereabouts and/or to file a proper warrant or detainer." (*Id*. at 9.)

The Eleventh Circuit has made clear that the "credit for time at liberty" doctrine does ***not*** apply where the delay occurs prior to the commencement of service of the sentence.

> This Court's prior precedent sets out the general rule that a delay in the commencement of a sentence does not, by itself, constitute service of that sentence. *See*, *e.g.*, *Scott v. United States*, 434 F.2d 11, 23 (5th Cir. 1970) ("This Court holds that the mere lapse of time that occurred here [27 months], without petitioner undergoing any actual imprisonment to which he was sentenced . . . does not constitute service of that sentence, and this sentence remains subject to be executed, notwithstanding the delay in executing it."); *United States ex rel. Mayer v. Loisel*, 25 F.2d 300, 301 (5th Cir. 1928)( "Mere lapse of time without the appellant undergoing the imprisonment to which she was sentenced did not constitute service of the sentence, which remained subject to be enforced . . . ."). This prior precedent compels us to conclude a convicted person, like Barfield, who has yet to serve any part of her sentence, is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing her sentence. A delayed sentence, like Barfield's, is still subject to be executed. *Scott*, 434 F.2d at 23; *Mayer*, 25 F.2d at 301.

*United States v. Barfield*, 396 F.3d 1144, 1147-48 (11th Cir. 2005)(internal footnotes omitted). The same is true here.

The evidence of record does not support a finding that petitioner began serving his Alabama sentences in 1981 or a finding that he has been at liberty at any time since he was convicted in Louisiana. As set forth above, following petitioner's return to Louisiana, the state of Alabama requested Louisiana to file a detainer on petitioner based on his conviction on the two rape cases; Louisiana agreed. (Doc. 13-1 at 10-11.) During his time in Alabama, petitioner remained a Louisiana prisoner, with Louisiana retaining the right to require the full

execution of his sentence in that state before surrendering him to Alabama. Because his Alabama's sentences were consecutive to the Louisiana sentence, petitioner did not start to serve his Alabama sentences until he was released by Louisiana after he had satisfied its sentence in 2007. The court finds petitioner did not begin to serve his Alabama sentences until his return to Alabama in 2007.

The Petition is due to be denied as to any claim based on petitioner's alleged entitlement to credit against his Alabama sentences for time served in Louisiana.

### 2. Waiver

Petitioner contends that Alabama waived his sentences by returning him to Louisiana in 1982. Although the Eleventh Circuit has recognized the doctrine of waiver of jurisdiction by a state, it has limited such a waiver to unusual circumstances due to affirmative or gross misconduct by state officials rising to the level of a due process violation. The court has written:

> This Court has held a delay in the execution of a sentence can, under certain circumstances, amount to a due process violation under the waiver of jurisdiction theory. *See Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973); *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967); *see also Mobley v. Dugger*, 823 F.2d 1495, 1496-97 (11th Cir. 1987)(citing *Piper*). The waiver of jurisdiction theory is premised on the constitutional protection against arbitrary and capricious official action. *See Camper v. Norris*, 36 F.3d 782, 784 (8th Cir. 1994); *Mobley*, 823 F.2d at 1496. The theory is commonly traced to our decision in *Shields*. In *Shields*, we held the state's inaction for 28 years constituted a waiver of its jurisdiction over the prisoner. 370 F.2d at 1005-06. We further explained the state violated the prisoner's due process rights when it required him to serve his sentence after waiving its jurisdiction over him. *Id*. at 1006. In *Piper*, we clarified *Shields*, explaining when it is that official

misconduct rises to the level of a due process violation. *See* 485 F.2d at 246. We explained:

> [In order for a delay in the execution of a sentence to be repugnant to the Fourteenth Amendment,] it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction.

*Mobley*, 823 F.2d at 1496-97 (alteration in original)(quoting *Piper*, 485 F.2d at 246).

*United States v. Barfield*, 396 F.3d 1144, 1148-49 (11th Cir. 2005).

The facts in the instant case fail to show such affirmative wrongdoing or grossly negligent conduct by any Alabama officials that might arguably rise to the level of being "unequivocally inconsistent with 'fundamental principles of liberty and justice.'" *Mobley*, 823 F.2d at 1496-97. Alabama officials "borrowed" petitioner from Louisiana to prosecute him on two rape charges and for him to testify in another case. After conviction and his testimony in the other matter, Alabama returned petitioner to Louisiana to continue serving that sentence. In 1984, Alabama requested that Louisiana place a detainer on petitioner and Louisiana did. (Doc. 13-1 at 10-11.) In 2007, petitioner, having satisfied his Louisiana sentence, was extradited to Alabama. Nothing in the record shows that Alabama officials' conduct was wrong, much less "unequivocally inconsistent" with principles of due process.

The Petition will be denied as to petitioner's claim that Alabama waived its jurisdiction over him by returning him to Louisiana to complete his sentence.

### III. CONCLUSION

Based on the foregoing considerations, the court finds that the petitioner is not entitled to § 2241 habeas corpus relief with respect to his Alabama sentence. He is not entitled to release from that sentence, even with all proper SGT and IGT good time credits being applied. An Order denying Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (doc. 1), and dismissing the instant action with prejudice will be entered contemporaneously with this Memorandum Opinion.

### CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2254 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for habeas corpus relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . ***only*** if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner

or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

For the reasons set forth above, the court finds that Mr. Brumfield has not demonstrated that he was denied any constitutional right or that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further. Therefore, the court finds the issuance of a certificate of appealability is not warranted in this case.

The Certificate of Appealability will be denied.

**DONE** this 19th day of October, 2015.

SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE